George A. MacKENZIE,
Plaintiff-Appellant,

v.

CHRYSLER CORPORATION,
Defendant-Appellee.

No. 79–1850
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1979.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

George A. MacKenzie, pro se.

Bourdeaux & Jones, William C. Hammack, Thomas D. Bourdeaux, Meridian, Miss., for defendant-appellee.

Before AINSWORTH, FAY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge:

This Mississippi diversity case was tried to a jury on a suit involving two causes of action: (1) breach of warranties, express and implied, and (2) tortious interference with plaintiff's employment contract, arising from the purchase by plaintiff-appellant George A. MacKenzie of a 1976 Dodge Aspen station wagon from Jones Motor Company of Amory, Mississippi. Defendant-appellee is Chrysler Corporation, manufacturer of the automobile in question. At the close of plaintiff's evidence, defendant moved for a directed verdict which was denied as to defendant's motion regarding breach of warranties, but granted on the issue of defendant's alleged tortious interference with MacKenzie's employment contract. The case was finally submitted to the jury on the issues of breach of Chrysler's express warranty[1] and the implied warranty of merchantability[2] arising from the sale of the automobile. The jury awarded plaintiff damages of $3,500, in response to special interrogatories in which it found that Chrysler did not breach its express warranty covering MacKenzie's automobile, but did breach the implied warranty of merchantability imposed by Mississippi law. MacKenzie has appealed, assigning several errors during the trial of the case. After a careful review of the proceedings below, we affirm.

Chronologically, the facts disclose that on December 1, 1972, MacKenzie entered into a contract with Memphis Publishing Company to distribute *The Commercial Appeal,* a Memphis newspaper. The contract was ter-

---

1. Chrysler issued MacKenzie upon his purchase of the Dodge Aspen station wagon its Limited Warranty for New 1976 Model Passenger Cars and Sportsman and Voyager Wagons, which became effective April 30, 1976. *See* Miss.Code Ann. § 75–2–313 (1972).

2. *See* Miss.Code Ann. § 75–2–314 (1972) (as amended).

minable by the company "at any time without cost or prejudice upon seven days written notice" to appellant.

On April 30, 1976, while MacKenzie was still a distributor of the paper, he purchased a new 1976 Dodge Aspen automobile from Jones Motor Company for a purchase price of $5,453. Incident to his purchase Chrysler issued to MacKenzie its express limited warranty, which included among other provisions a "Free Loaner" clause. Under this provision, the dealer agreed to supply a rental car to the customer for overnight use if warranty repairs could not be completed in one working day. The clause further provided that to be eligible for a "loaner," the customer was required to make an appointment in advance to insure that a rental car would be available.

Between April 30 and September 30, 1976, MacKenzie had numerous problems with his automobile. Upon each occurrence, he brought his car to Jones Motor Company, where it was repaired at no cost to appellant, other than charges for replacement of the oil and filter. Sometime in late September, MacKenzie wrote a letter to *Action, Please,* a consumer column published in *The Commercial Appeal,* stating the problems he was having with his automobile. Mark Hanna, the columnist who received the complaint, sent copies of the letter to Jones Motor Company and Chrysler's regional office in Memphis. Roy Cash, Chrysler's Memphis representative, telephoned Hanna concerning the letter and notified him that Chrysler was attempting to correct the problem. Cash then had MacKenzie take his car to Jones Motor Company where it remained overnight for major repair work. MacKenzie was not

given a "loaner" at this time because, according to the dealer, no rental cars were available. Appellant then became angry and prepared several copies of a note which he attached to the papers he delivered late that evening. The note stated:

PAPER LATE TODAY BECAUSE JONES MOTOR DOES NOT HONOR WARRANTY ON MY NEW CAR. CAR HAS BEEN IN FOR REPAIRS 25 TIMES SINCE MAY 1.

One copy of the paper with a note attached was delivered to Jones Motor Company. The owner, Jack Jones, called Roy Cash at Chrysler's Memphis office on September 30 and told him about the note. Cash then called Hanna of *Action, Please* and complained about MacKenzie's actions. Subsequent to this call Hanna wrote a memorandum[3] to Maurice Sparby, Circulation and Advertising Director of *The Commercial Appeal,* concerning the conversation with Cash. The memo ultimately reached David Ceasar, Mid-South Circulation Director for *The Commercial Appeal.* Ceasar contacted T. L. McCoy, the newspaper's District Manager in MacKenzie's district, who informed him of numerous other complaints from subscribers concerning MacKenzie's collection practices. McCoy also told Ceasar that appellant had been admonished by him in the past for inserting in papers he delivered circulars advertising his roof cleaning business in violation of the company's policies. On October 11, 1976, Ceasar wrote MacKenzie terminating his employment contract effective October 31, 1976. This lawsuit followed.

 Appellant challenges the district court's granting of a directed verdict on the issue of Chrysler's alleged tortious interfer-

---

3. The memorandum stated:

Roy Cash, zone director for the Chrysler Corp., contacted Action, Please concerning the actions of one of our complainants and asked that we bring this to your attention. The complainant, George MacKenzie of Amory, Miss., contacted Action, Please several days ago concerning problems he was having with a car he purchased from an Amory car dealer.

Mr. MacKenzie is also a delivery man for The Commercial Appeal, and Wednesday morn-

ing took it upon himself to voice his problems with Chrysler and the car dealer by attaching a note to all the newspapers he delivered. He did the same thing with a Tupelo, Miss., newspaper which he also delivers.

Mr. Cash says the Tupelo newspaper has asked for a public apology from Mr. MacKenzie. He would like to know what action, if any, The Commercial Appeal plans to take. Please let us know of your decision.

ence with MacKenzie's employment contract, and also the court's refusal to submit to the jury certain instructions concerning warranties. With regard to the directed verdict, application of the test enunciated by this court in *Boeing Co. v. Shipman,* 5 Cir., 1969, 411 F.2d 365,[4] requires us to conclude that the district court properly granted defendant's motion. After a consideration of all of the evidence in the light most favorable to appellant, it is clear that MacKenzie offered proof of no facts that would allow "reasonable and fair-minded men in the exercise of impartial judgment," 411 F.2d at 374, to find that Chrysler tortiously interfered with appellant's contract with Memphis Publishing Company. There is no "conflict in substantial evidence" as required by *Boeing,* 411 F.2d at 375, since plaintiff failed to present facts sufficient to establish the elements necessary to create a jury question. Under applicable law, an action for tortious interference with a contract will lie only where a party "maliciously interferes with a valid and enforceable contract." *Mid-Continent Telephone Corp. v. Home Telephone Co.,* N.D.Miss., 1970, 319 F.Supp. 1176, 1199. Malice in this context is defined as "the intentional doing of a harmful act without justification or excuse." 319 F.Supp. at 1200. Here, there is no evidence in the record that Chrysler or any of its agents did or were in a position to maliciously interfere with MacKenzie's employment contract.[5] Cash's call to Hanna at *The Commercial Appeal* following Mac-Kenzie's note was no more than a justifiable circulation complaint, which does not give rise to an inference of malice or intent to do harm to appellant's contractual relationship with his employer. Subsequent to this call, Chrysler had no other communications with the newspaper or Memphis Publishing Company concerning MacKenzie's actions. Thus, the district court committed no error in granting defendant's motion for a directed verdict.

Appellant's next contention relates to the trial court's refusal to submit to the jury certain instructions. This court has stated repeatedly the standard for appellate review: the charge must be viewed as a whole; if it generally correctly instructs the jury on the law, no harmful error is committed. *E. g., Andry v. Farrell Lines, Inc.,* 5 Cir., 1973, 478 F.2d 758, 759; *Bolden v. Kansas City Southern Railway Co.,* 5 Cir., 1972, 468 F.2d 580, 581; *Troutman v. Southern Railway Co.,* 5 Cir., 441 F.2d 586, 590, cert. denied, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971). An examination of the entire charge shows that the trial judge properly instructed the jury on the applicable law, and thus no reversible error was committed.

■ Appellant complains that the court erred in failing to charge the jury on the issue of strict liability. Under Mississippi law, before a party is entitled to recover under this theory three factors must be established:

---

4. On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.
411 F.2d at 374–75 (footnote omitted).

5. There was no evidence in the record that Chrysler had ever advertised in *The Commercial Appeal* or was even a subscriber of the newspaper.

(1) that the plaintiff was injured by the product; (2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous; and (3) that the defect existed at the time it left the hands of the manufacturer.

*Early-Gary, Inc. v. Walters,* 294 So.2d 181, 186 (Miss.1974); *see also State Stove Manufacturing Co. v. Hodges,* 189 So.2d 113, 118–23 (Miss.1966). Appellant fails in the first instance to fit the requirements of *Walters,* since he did not produce any evidence at trial of physical harm to himself or his other property resulting from any alleged defects in Chrysler's product. Furthermore, there was no proof of any facts indicating that Chrysler's product was unreasonably dangerous. It was, therefore, proper for the court to omit this instruction.

■ MacKenzie next protests the court's refusal to submit to the jury the issue of breach of the implied warranty of fitness for a particular purpose.[6] Again, appellant failed to produce facts sufficient to establish the elements necessary to entitle him to recovery under this theory. To present a cause of action for breach of this warranty, a party must show that:

(1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods; and (3) the goods were unfit for the particular purpose.

*Garner v. S&S Livestock Dealers, Inc.,* 248 So.2d 783, 785 (Miss.1971). In this case, although MacKenzie discussed with the dealer his intended use of the car, there is no evidence indicating he relied on any agent or representative of Chrysler to select the particular car he ultimately purchased.

Therefore, the issue of implied warranty of fitness for a particular purpose was properly not submitted to the jury.

■ Finally, appellant claims he was entitled to a jury instruction regarding provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* In refusing this charge, the district court held that this Act was not applicable to the warranty involved in this case, and that even if it were, it would overlap the implied warranty of merchantability imposed by Mississippi law, thereby making such an instruction redundant. Because plaintiff MacKenzie would have been entitled to recover no more under the Magnuson-Moss Warranty Act than he did recover under the court's instructions regarding the express and implied warranties set out by Mississippi law, we hold that the court's failure to grant appellant's requested charge, if error, was harmless and therefore insufficient to require reversal.

■ The Magnuson-Moss Warranty Act is virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty.[7] However, the statute provides that nothing in the Act "shall invalidate or restrict any right or remedy of any consumer under State law . . . ." 15 U.S.C. § 2311(b)(1). Furthermore, the legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act.[8] Under Mississippi law the general measure of damages for breach of warranty is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . ." Miss.Code Ann. § 75–2–714(2) (1972) (as amended). The Code also states that conse-

---

**6.** *See* Miss.Code Ann. § 75–2–315 (1972) (as amended).

**7.** The remedies set forth in 15 U.S.C. § 2304 are applicable only to "full" warranties, those meeting the requirements of that section. *See* 15 U.S.C. § 2303(a)(1). The warranty in this case is a "limited warranty" as defined by section 2303(a)(2).

**8.** Warranties are currently governed by common law and the Uniform Commercial Code. . . . In the jurisdictions where it [the U.C.C.] is in effect, it generally controls the rights of parties in commercial transactions and it is commonly accepted as today's law of sales.

H.R.Rep. No. 1107, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 7702, 7706.

quential damages may be recovered in the proper case. Miss.Code Ann. § 75–2–714(3) (as amended). The court determined that this was not a proper case to instruct the jury on the issue of consequential damages, apparently because plaintiff MacKenzie did not allege or prove damages of a physical nature and Chrysler's limited warranty expressly excluded liability for consequential damages of an economic nature. Such an exclusion when limited to economic loss is proper under Mississippi law.[9]

With regard to plaintiff's prayer for punitive damages, the key provisions of the Mississippi Code pertaining to the measure of damages recoverable for breach of warranty do not provide for recovery of punitive damages. The absence of any such provision reflects the firmly established rule that punitive damages are generally not recoverable in breach of contract suits where there is no showing of intentional wrong, insult, abuse or gross negligence. *E. g., Bellefonte Insurance Co. v. Griffin,* 358 So.2d 387, 391 (Miss.1978); *New Hampshire Insurance Co. v. Smith,* 357 So.2d 119, 121 (Miss.1978); *Lincoln National Life Insurance Co. v. Crews,* 341 So.2d 1321, 1322 (Miss.1977); *Progressive Casualty Insurance Co. v. Keys,* 317 So.2d 396, 398 (Miss. 1975).

 Therefore, the court's instruction that the measure of MacKenzie's damages was "the difference at the time and place of acceptance between the value of the Dodge Aspen automobile, its purchase price, and the value it would have had had it been as warranted, unless you find from a preponderance of the evidence that special circumstances show proximate damage of a different amount," conveyed to the jury a clear understanding of the applicable law as a whole. Thus, the aspects of the charge challenged by appellant did not constitute error.[10]

The other issues raised by appellant are either wholly without merit or involve matters within the trial court's discretion and we fail to find an abuse of that discretion sufficient to require reversal.

AFFIRMED.

---

**9.** See Miss.Code Ann. § 75–2–719(3) (1972) (as amended). *See also Dry Clime Lamp Corp. v. Edwards,* 5 Cir., 1968, 389 F.2d 590, 594.

**10.** Appellant was also not entitled to recover the purchase price of the car since he continued to drive it for a period of almost three years, and over 37,000 miles. *See Allen v. Edwards,* 217 So.2d 284, 286 (Miss.1969); *F.M.C. Corp. v. Strebeck,* 196 So.2d 74, 77 (Miss.1967).