Joseph MONTICELLO, Plaintiff,

v.

WINNEBAGO INDUSTRIES, INC., and Workhorse Custom Chassis, LLC., Defendants.

Civil Action No. 1:04–CV–0041–RWS.

United States District Court, N.D. Georgia, Atlanta Division.

March 9, 2005.

---

Eric Scott Fortas, Jack Gunn, Marshall S. Meyers, Krohn & Moss Atlanta, GA, for Plaintiff.

Mark Daniel Lefkow, Michael David Hostetter, Nall & Miller, Atlanta, GA, for Defendant, Winnebago Industries, Inc.

Chilton Davis Varner, Franklin P. Brannen, Jr., Jacob Edward Daly, King & Spalding, Atlanta, GA, for Workhorse Custom Chassis, LLC, defendant.

### ORDER

STORY, District Judge.

Now before the Court for consideration are Defendant Workhorse Custom Chassis, Inc.'s Motion for Summary Judgment [51–1], Defendant Winnebago Industries, Inc.'s Motion for Summary Judgment [53–1], Defendant Winnebago Industries, Inc.'s Motion to Supplement [63–1], and Plaintiff's Motion to Supplement [66–1]. After considering the entire record and the arguments of the parties, the Court enters the following Order.

### Background

#### I. The Purchase

This case is for breach of warranty arising out of Plaintiff's purchase of a recreational vehicle. Plaintiff Joseph Monticello and his wife purchased a new 2003 Winnebago Sightseer recreational vehicle (the "Vehicle" or the "RV") in March 2003. Plaintiff purchased the RV in Lake Park, Georgia from Suncoast RV and entered into a Retail Installment and Security Agreement with Suncoast for purchase of the RV. (Monticello Dep. at 18; Pl.'s Compl. [1] Ex. A.)[1] Defendant Winnebago Industries, Inc. ("Winnebago") is a foreign corporation authorized to do business in the State of Georgia. Winnebago is engaged in the manufacture of recreational vehicle components and related equipment and services which it distributes through authorized dealers, including Suncoast RV. Defendant Workhorse Custom Chassis, LLC. ("Workhorse") is an Illinois limited

liability corporation that is authorized to do business in the State of Georgia. Workhorse is engaged in the manufacture and sale of chassis used in motor homes. Workhorse manufactured the chassis used in Plaintiff's 2003 Winnebago Sightseer. (Def.'s Answer to Pl.'s Am. Compl. [18] ¶¶ 1,4.)

#### II. The Warranties

##### A. The Winnebago Limited Warranty

At the time of the purchase, Plaintiff signed a Winnebago Sale and Warranty Registration Card where he certified that "I HAVE BEEN GIVEN THE WARRANTY DOCUMENTS FOR THIS VEHICLE PRIOR TO SALE AND I HAVE READ, UNDERSTOOD AND AGREE TO ITS TERMS FULLY." (Def.'s Mot. for Summ. J. Ex. 4.)[2] Plaintiff, however, does not recall receiving the limited warranty and states that his signature took place at a time when he was signing numerous documents. (Monticello Dep. 23–24.) The warranty is titled the "2003 New Vehicle Limited Warranty." (See Def.'s Mot. for Summ. J. [53] Ex. 5 (hereinafter "Winnebago Warranty").) The Warranty provides that the basic warranty period is twelve months or 15,000 miles, whichever occurs first.[3] It also states that

ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THIS VEHICLE IS LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN WARRANTY AS HEREINBEFORE OR HEREINAFTER PROVIDED. THE PERFORMANCE OF REPAIRS

1. Suncoast RV is not a party to this action.

2. Items reproduced in all capital letters reflect that the particular item was in all capital letters in the original.

3. The Warranty provides extended coverage to additional specific items for thirty-six months or 36,000 miles, whichever comes first. These items are specified in the warranty.

IS THE EXCLUSIVE REMEDY UNDER THIS WRITTEN WARRANTY OR ANY IMPLIED WARRANTY. WINNEBAGO INDUSTRIES SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR LOSS OF TIME, INCONVENIENCE, OR OTHER CONSEQUENTIAL DAMAGE.

(*Id.*) The Warranty specifies "ITEMS NOT SUBJECT TO WARRANTY COVERAGE" as "Chassis, Wheels, Tires, Service items, such as Windshield Wiper Blades, Lubricants, Fluids & Filters," and "Adjustments." Additionally, the Warranty specifies the steps a customer should follow when seeking repairs under the section titled "CUSTOMER RESPONSIBILITY WHEN REPAIRS ARE NEEDED." This section informs a consumer to take his vehicle to the selling dealer for repairs. If the dealer cannot repair the vehicle, the procedure states that the dealer should contact Winnebago. If the repair is still not made, the consumer should contact Winnebago directly. Winnebago's address and phone number are listed.

## B. The Workhorse Limited Warranty

At the time of Plaintiff's purchase of the RV he also received an owner's manual from Workhorse. (Monticello Dep. at 98.) Section 7 of the owner's manual contains the "New Chassis Limited Warranty." (*See* Def.'s Mot. for Summ. J. [51] Ex. 1 (hereinafter "Workhorse Warranty").) The Workhorse Warranty in the section titled "Basic Chassis Coverage" provides that "Chassis Coverage includes the chassis frame, axle, engine, transmission, brakes, steering, suspension, and certain electrical components supplied by WCC." (Warranty at 328.) This coverage extends for three years or up to 46,000 miles, whichever comes first. This section also identifies that there are certain exceptions to basic coverage which are listed under the section titled "What is not covered"

and refers the consumer to pages 330, 331, 332, and 333. (*Id.*)

As to the air-conditioning system, the Workhorse Warranty states that "the components that were installed by [Workhorse] will be covered under the Basic Chassis Coverage." (Warranty at 334.) It further identifies the components that may have been installed as the "compressor, condensor, condensor fan, receiver-drier, line between compressor and condensor, and the high and low pressure cut-off switches." The Warranty states that all other components of the air-conditioning would have been installed by the body company and refers the consumer to the body company's warranty. (*Id.*) The warranty provides in bold print that

> **Any, implied warranty of merchantability or fitness for a particular purpose applicable to this chassis is limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. WCC shall not be liable for incidental or consequential damages (such as, but not limited to, lost wages or vehicle rental expenses) resulting from breach of this written warranty or any implied warranty.**

(*Id.* at 333.)

## III. The Problems

Plaintiff contends that he had numerous problems with the RV and that he had to take it in for service at least seven times and that he could not use the RV for over ninety days. (Monticello Aff. [60] ¶ 13.) The record is less than clear, however, on the specific repairs sought by Plaintiff including when he sought them and from whom.

The vehicle inspection report conducted by Winnebago's Service District Manager,

Steve Hamme, indicates that on the date of purchase in March 2003, "max air vents" were installed for Plaintiff. (Def.'s Mot. for Summ. J. [53] Ex. 6 (hereinafter "Hamme Aff.").) At that time the RV had mileage of 1,369 miles. (*Id.*) On July 29, 2003, the RV was brought in to Winnebago, presumably at Suncoast, for an oil change at 5,541 miles. When Plaintiff returned to pick-up the RV, he noticed that the "check engine light" was on and there was smoke coming from the exhaust. (Monticello Dep. at 47.) Plaintiff was told that he should contact Workhorse regarding the problem. A repair order dated July 30, 2003, shows that Plaintiff's RV was serviced by Travel Country RV Center in Lake Park, Georgia. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. [58] Ex. D.) According to the repair order the customer is designated as "Workhorse" and the order indicates that Plaintiff complained that the check engine light was on, the unit was smoking when running and the air conditioning was blowing hot air when the RV was in idle. (*Id.*) Regarding the first two complaints, the order indicates that the fuel injector was repaired. As to the last complaint, the order states that the problem could not be duplicated and that the unit would not cool because of the configuration. (*Id.*)

Plaintiff then began the return trip to his home in Tennessee when he experienced continued smoke coming from the exhaust. (Monticello Dep. at 50.) Workhorse then sent a tow-truck and had the RV towed to Kenworth of Atlanta for repairs. (Pl.'s Resp. to Def.'s Mot. for Summ. J. [58] Ex. D.) That repair order also indicates that it is being made pursuant to a Workhorse warranty. The Kenworth repair order indicates that they found a fuel injector leak and that it was repaired.

After the repair by Kenworth, Plaintiff still noticed smoke coming from the exhaust and against contacted Workhorse. (Monticello Dep. at 55.) This time, Workhorse referred him to Camping Time RV Center in Woodstock, Georgia. The Camping Time repair order indicates that the RV was taken in on September 6, 2003. Plaintiff made several complaints and/or requests about the RV at that time including: (1) that the RV was blowing fuel and smoke from the exhaust; (2) the check engine light was on; (3) the jack down lights were coming on; (4) the cover and tray were loose on the engine cover; and, (5) he requested service for a Winnebago recall.

The order indicates that the first two problems were related. Camping Time "found a bad TAC module," "replaced PCM and calibrated crank position," and reprogrammed the PCM which repaired the problem with the check engine light and the smoke coming from the exhaust. As to the jack lights, the order notes that Camping Time is not a certified Winnebago warranty facility. As to the Winnebago recall, the order states that the recall work is for the gas stove and is not for chassis work. Since the repair at Camping Time, Plaintiff has not had a problem with the check engine light and smoke no longer comes out of the exhaust. (Monticello Dep. at 56–57.) Plaintiff states, however, that fluid comes out of the exhaust and the oil light stays on and the jack light comes on.

By a letter dated November 13, 2003, Plaintiff, through counsel, sent a letter to Defendants purporting to revoke acceptance of the RV. The letter alleges that "[b]ecause of the inordinate amount of repairs within the applicable warranty period, my client has justifiably lost confidence in the vehicle." (Def.'s Mot. for Summ. J. [58] Ex. 9 (hereinafter "Revocation Letter").) The letter requests return of all funds paid toward the vehicle, the cancella-

tion of all applicable contracts and compensation for damages. The letter states that Plaintiff has a security interest in the vehicle and therefore, Plaintiff will "hold the RV and use it to the extent necessary to preserve it, to protect its security interest, and to minimize your damages." (*Id.*)

Subsequently, on November 15, 2003, the RV had mileage of 6,587 miles and Plaintiff brought the RV to Suncoast RV for three complaints including: (1) a stove recall notice; (2) the jack down light was coming on while driving; and (3) the change oil light staying on. The repair order states that a partition was installed behind the stove pull out drawer in response to the stove recall, hydraulic fluid was added regarding the jack down light and that the reset code for the oil change light would need to be obtained from Winnebago. Plaintiff states that Suncoast told him that they would get the codes from Winnebago, and then call him with the codes. (Monticello Dep. 59–60.) After picking up the RV from Suncoast, around Thanksgiving of 2003, Plaintiff drove the RV to Florida for a vacation. (Monticello Dep. at 62.)

Finally, Plaintiff brought the RV to Suncoast on April 3, 2004 at a mileage of 8,131 miles. Plaintiff complained about the jack light, that the dash blew hot air, that the change oil light was still on and that the double bed lifts were inoperable. Plaintiff was informed that his RV would not be repaired by Winnebago because it was out of warranty.

## IV. The Lawsuit

Plaintiff filed suit against Winnebago and Workhorse on January 6, 2004 asserting claims under the Magnuson–Moss Warranty Act for Defendants' breach of written warranties and breach of implied warranties. Plaintiff filed his amended complaint on February 23, 2004. Plaintiff's Amended Complaint asserts that he brought the RV in for repairs for the following defects including: defective electrical system; defective engine; defective fuel injector; defective air-conditioning system; defective interior trim; persistent fuel leak; defective PCM; defective TCM; persistent recalls; and, defective jacks.

## Discussion

As a preliminary matter, the Court will address Defendant Winnebago Industries, Inc.'s Motion to Supplement [63–1], and Plaintiff's Motion to Supplement [66–1]. Defendant Winnebago filed a motion to supplement the record with a decision by the Honorable Thomas W. Thrash. Plaintiff objected. In so far as the opinion is, in fact, a published opinion, the Court finds that the opinion may be properly considered by the Court. The Court has duly noted Plaintiff's objections. Accordingly, Defendant's Motion to Supplement [63–1] is hereby **GRANTED.**

Additionally, Plaintiff has filed a Motion to Supplement his memorandum of law in opposition to Defendant Workhorse's Motion for Summary Judgment. In this motion, Plaintiff seeks to supplement the record with a policy and procedure manual that governs the relationship between Workhorse and the companies who perform repairs pursuant to the Workhorse Limited Warranty. Plaintiff contends that it did not receive the manual in response to its discovery requests. Defendant has objected and states that the portion of the manual presented by Plaintiff is not relevant in that it does not govern the relationship between Plaintiff and Defendant and that Plaintiff actually received the material prior to filing his response in this matter. The Court finds that Plaintiff has not established how the addition to the record is relevant to his claims in this case. Moreover, it appears that Plaintiff's motion is untimely. Accordingly, Plaintiff's Motion to Supplement [66–1] is hereby **DENIED.**

## I. The Magnuson–Moss Warranty–Federal Trade Commission Improvement Act

Plaintiff has asserted claims under the Magnuson–Moss Warranty–Federal Trade Commission Improvement Act, 15 U.S.C. §§ 2301–2312 (2004). Magnuson–Moss was enacted "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302. The Act does not require manufacturers of consumer goods to provide warranties, rather it creates specific duties and liabilities for the manufacturer that chooses to do so. *Cunningham v. Fleetwood Homes of Ga.*, 253 F.3d 611, 617 (11th Cir.2001); *see* 16 C.F.R. § 700.3. The Act provides consumers who are damaged by the failure of a supplier, warrantor, or service contractor to comply with the Act with a private right of action in either state or federal district court. 15 U.S.C. § 2310(d).

■ "[E]xcept in the specific instances in which Magnuson–Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law." *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C.Cir.1986). The Act supplements, rather than supplants state law. *See* 15 U.S.C. § 2311(b) ("Nothing in this chapter shall invalidate or restrict any right or remedy of any consumer under State law or any other Federal law"). Therefore, a federal court applies state law to claims under the Act for breach of written and implied warranties. *Bailey v. Monaco Coach Corp.*, 350

F.Supp.2d 1036, 1040 (N.D.Ga.2004); *see Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (recognizing that specific requirements in warranties are in the way of contractual undertakings imposed solely by the warrantor but that liability for breach is determined by reference to state law); *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir.1979) (noting that Magnuson–Moss Act did not restrict remedies under state law and holding that resort to state law is proper to determine amount of damages);[4] *see also Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir.1999) (applying state substantive law to determine whether punitive damages were available).[5]

A federal court applies the choice of law rules of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Georgia adheres to the traditional rule of *lex loci contractus*, that contracts are governed as to their nature, validity, and interpretation by the law of the place where they were made except where it appears from the contract itself that it is to be performed in a state other than that in which it was made. *Convergys Corp. v. Keener*, 276 Ga. 808, 582 S.E.2d 84, 86 n. 1 (2003). Plaintiff purchased the RV in Lake Park, Georgia. This Court will therefore apply Georgia law to Plaintiff's breach of warranty claims.

### A. Breach of written warranty

■ Under Georgia law, a written warranty that provides for repair or replacement of parts imposes two conditions to recovery for breach of the warranty. *Mc-*

---

4. The U.S. Court of Appeals for the Eleventh Circuit adopted as binding precedent the decisions of the U.S. Court of Appeals for the Fifth Circuit handed down prior to September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

5. The Court notes that the warranties before the Court are specifically designated as "limited warranties" and not "full warranties" and so the warranties are not required to meet the minimum standards set forth in 15 U.S.C. § 2304. *See Bailey*, 350 F.Supp.2d at 1042.

*Donald v. Mazda Motors of Am., Inc.*, 269 Ga.App. 62, 603 S.E.2d 456, 460 (2004). First, a plaintiff must show that the warrantor had notice of the defect. *Id.* Second, the warrantor must have also had a reasonable opportunity to repair the defect. *Id.; see also* 15 U.S.C. § 2310(e) (stating that "No action may be brought . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply."). "When the purchaser returns the product to the dealer and makes the product available for repair, *refusal* to repair, *unsuccessful* repair, or *repeated* failures of the repair constitute a breach of the express warranty." *Id.* (emphasis supplied).

In *McDonald*, the Georgia Court of Appeals held that the plaintiff had created a question of fact with regard to whether the defendant breached warranties by its failure to repair the plaintiff's car. 603 S.E.2d at 461. In that case, the plaintiff purchased a new car that almost immediately developed a loud rattling noise under the engine and transmission. *Id.* at 458. Two separate times, the plaintiff returned the car to an authorized repair facility, where the manufacturer acknowledged the problem but informed the plaintiff that no repair was available at that time. *Id.* Almost eight months after the purchase, the manufacturer had not even attempted a repair and the plaintiff wrote to the manufacturer complaining of the unrepaired defects and the unreasonable delay. *Id.* The manufacturer did not attempt a repair until seventeen months after the purchase. *Id.* at 461.

In analyzing the plaintiff's claim, the *McDonald* court recognized that the plaintiff was required to provide the manufacturer with notice and a reasonable opportunity to cure. *Id.* at 460. The court noted that since there was no repair avail-

able for the defect, then there would necessarily be a breach of warranty. *See id.* ("Obviously, if there is no repair remedy for a defect, then there will be a breach of warranty because the product is not merchantable with an unrepairable defect."); *see also Ford Motor Co. v. Gunn*, 123 Ga.App. 550, 181 S.E.2d 694, 696 (1971) (stating that warranty may have been breached where evidence showed that the vehicle had an abnormal amount of vibration and all of manufacturer's efforts to correct it had not been successful). By contrast, if the defect could be cured, there would be no breach of warranty because the plaintiff would have what he had bargained for, "a product that would pass in the trade." *McDonald*, 603 S.E.2d at 460.

A warranty is not instantly breached, however, just because the vehicle is found to have a defective part or some operational deficiency. *Gunn*, 181 S.E.2d at 696. It is the "*refusal to remedy* within a reasonable time, or a *lack of success* in the attempts to remedy which would constitute a breach of warranty." *Id.* (emphasis in the original). For instance, Georgia Courts have found no breach of warranty where the plaintiff has received some repairs under the warranty but fails to return to the manufacturer or its authorized dealer for a final attempt to repair. *Simpson v. Hyundai Motor Am., Inc.*, 269 Ga.App. 199, 603 S.E.2d 723, 727 (2004).

In this case, Plaintiff's Amended Complaint identified ten specific defects that he contends he brought to the attention of an authorized service dealer including: defective electrical system; defective engine; defective fuel injector; defective air conditioning system; defective interior trim; persistent fuel leak; defective PCM; defective TCM; persistent recalls; defective jacks; and any additional defects contained on the repair orders. (Pl.'s Am. Compl. ¶ 14.) [6] In order to survive sum-

---

6. Plaintiff argues that the warranties fail to    comply with Federal Trade Commission Reg-

mary judgment, however, it is not sufficient that Plaintiff now claim that these items are defective, but he must show that the manufacturer had notice of the defect and a reasonable opportunity to cure the defect. *McDonald,* 603 S.E.2d at 460. Plaintiff asserts claims against both Winnebago and Workhorse under their separate written warranties. The Court reviews the warranty service by each manufacturer separately.[7]

### 1. Workhorse warranty

■ Plaintiff generally complains of having taken his RV in for numerous repair attempts for several problems by vague reference to the group of repair orders attached as exhibits to his response. (*See* Pl.'s Resp. to Def.'s Mot. for Summ. J. [59] Ex. C.) Plaintiff failed to identify the specific complaints or the result of the repair attempts. The Court attempts to do so here in order to determine which of the alleged defects Defendant had notice of and whether Plaintiff gave Workhorse a reasonable opportunity to cure the problem.[8]

From July through September 2003, Plaintiff's RV was serviced three times by three different authorized repair facilities under the Workhorse Warranty. First, on July 30, 2003 Plaintiff's RV was serviced under the Workhorse Warranty by Travel Country RV Center. Plaintiff complained that the check engine light was on, there was smoke coming from the RV and the air-conditioning was not sufficiently cool. Regarding the check engine light and the smoke, the order indicates that the fuel injector was replaced. As to the air-conditioning, the order notes that the problem could not be duplicated and that the unit

---

ulations and therefore any disclaimers, limitations or exclusions in the warranties are void. Consequently, Plaintiff contends that the warranties cover everything. Magnuson–Moss delegates the promulgation of specific disclosure requirements to the FTC. *Cunningham,* 253 F.3d at 620. Plaintiff has provided no authority to suggest that failure to comply with the FTC disclosure requirements results in nullification of the warranty's exclusions and disclaimers. *See Bailey,* 350 F.Supp.2d at 1041 (rejecting identical argument). Rather, a failure to comply with FTC disclosure requirements would more properly form the basis of a claim for unfair or deceptive acts or practices under Magnuson–Moss and the Federal Trade Commission Act. 15 U.S.C. §§ 45(a)(1), 2310(b). *Cunningham,* 253 F.3d at 620–21. Plaintiff has not raised such a claim in this case.

7. Plaintiff argues that the repairs under the Winnebago Warranty and the Workhorse Warranty should be viewed together because Plaintiff purchased a single vehicle and not the individual components. Plaintiff has cited no authority to suggest that it is improper for two manufacturers to provide a limited warranties covering the parts of the vehicle that each manufactured. Moreover, each of the warranties identifies the portions of the vehicle which it covers and indicates items that are not covered. Though Plaintiff contends that the warranties fail to identify each specific component Plaintiff has not referenced any regulation that would require such detail.

Notably, the Workhorse Warranty includes a diagram of the primary portion of the vehicle it covers. Furthermore, it appears that Plaintiff understood that he was covered under different warranties, because after he received certain repairs from Workhorse he returned to Suncoast for repairs under the Winnebago warranty. Finally, there is no evidence that Plaintiff ever complained of a defect during the warranty period which both Winnebago and Workhorse claimed was covered by the other's warranty, and therefore there does not appear to be a conflict between the two.

8. The Court discusses only the defects Plaintiff complained about which are evident in the repair orders before the Court. Plaintiff's response has pointed to no record evidence to show that Defendant had notice of Plaintiff's complaints. Plaintiff's statement of facts in response to Defendants' Motions for Summary Judgment makes only vague assertions regarding the number and nature of Plaintiff's individual complaints.

will not cool sufficiently at idle "due to configuration."

After this repair attempt, Plaintiff still had problems with smoke coming from the engine. The second repair was performed by Kenworth of Atlanta. That repair order indicates that a fuel injector leak was repaired. The Kenworth repair order does not indicate that Plaintiff complained about the air-conditioning.

Finally, Plaintiff's third repair was done by Camping Time RV. This repair order indicates that Plaintiff made several complaints. First, Plaintiff complained of the fuel and smoke coming out of the engine and that the check engine light was on. The Camping Time repair order states that these two problems were related. Camping Time undertook the repairs and Plaintiff admits that he has not had any problem with smoke coming from the engine or the check engine light since the repair. Second, Plaintiff complained about the jack down lights and requested service pursuant to a Winnebago recall. The repair order notes that Camping Time RV is not a certified Winnebago warranty facility and that the recall work regarding the stove is not chassis work. Third, the repair order states that the cover and tray is loose on the engine cover. The result of this repair is not indicated on the repair order.

Based on the overall repair history, the Court finds that summary judgment is due to be granted to Workhorse on Plaintiff's written warranty claim. First, while it is evident that Plaintiff had repeated problems with smoke coming from the engine and the check engine light coming on he admits that these problems were repaired. *See McDonald*, 603 S.E.2d at 460 (no breach of warranty if defect is cured). Although Plaintiff stated in his deposition

that he still has fluid coming from the engine, there is no evidence that he has brought this to the attention of Workhorse or one of their authorized repair facilities and that they failed to repair it. *See id.* (warrantor must have notice of defect). The record reflects that while Plaintiff did have problems with the engine, Workhorse diligently attempted to make the repairs each time Plaintiff complained and Plaintiff has acknowledged the effectiveness of the repairs.

Second, as to his complaint regarding the air-conditioning, this complaint was made in July to Travel Country RV. The repair order indicates that the problem could not be duplicated. Furthermore, even if there was a problem, Plaintiff could have raised the complaint in the two subsequent repairs undertaken by Kenworth of Atlanta and by Camping Time RV. Plaintiff has pointed to no evidence in the record to suggest that he ever raised the complaint about the air-conditioning with Workhorse.[9]

Finally, Plaintiff has not made any complaint about the loose engine cover he reported to Camping Time RV. The only other complaints that Plaintiff made to Workhorse, were regarding the jack lights and the service recall. The repair order indicates, however, that these repairs were not undertaken because the servicer was not a certified Winnebago facility. This alerted Plaintiff that he would need to address these problems to his Winnebago facility. Plaintiff apparently understood this because in November 2003 he took his RV in to Suncoast RV, the authorized Winnebago dealer where he purchased his RV.

Plaintiff has failed to create a genuine issue of material fact regarding whether Workhorse breached the written warranty.

9. Plaintiff did complain about the air-conditioning in April 2004 when he took his RV in for service at Suncoast RV. Suncoast RV, however, is not a repair facility for Workhorse, but a repair facility for Winnebago.

Based on the evidence before the Court, the defects that Plaintiff complained of were either repaired or covered only by the Winnebago Warranty. Plaintiff argues that the reasonableness of the repairs should be viewed based on the repairs to the vehicle as a whole, rather than by each component. Even viewing the repair history as whole, however, supports the conclusion that Workhorse continued to provide warranty service to Plaintiff and continually effected repairs until the repairs that Plaintiff requested were remedied. Plaintiff cannot now complain about alleged defects that were never raised with the warrantor. By failing to raise the air-conditioning complaint and the complaint about fluid coming from the exhaust, Plaintiff has failed to provide Workhorse with notice and a reasonable opportunity to cure the problem and cannot recover for breach of the written warranty. *Simpson*, 603 S.E.2d at 727.

### 2. *Winnebago warranty*

■ After his purchase in March 2003, the record reflects that Plaintiff only took his RV to an authorized Winnebago repair facility twice during the term of the warranty, once for an oil change in July 2003 and once for a repair. The warranty provides coverage for the first twelve months or 36,000 miles, whichever occurs first. On November 15, 2003, Plaintiff took his RV to Suncoast RV and requested three repairs. First, he requested service for the stove recall. The repair order indicates that a partition was installed behind the stove pull out drawer. Plaintiff's Complaint alleges "persistent recalls" but the record indicates that this is the only Winnebago recall service that was made. Second, Plaintiff complained that the jack light comes on while he is driving. The repair order indicates that hydraulic fluid was added. Finally, Plaintiff also complained that the oil light stays on. The order notes that the light needs to be reset and to "ck [sic] with Winnebago for reset code."

Plaintiff has failed to create a genuine issue of material fact regarding breach of the written Winnebago warranty. Even if the Court found that Winnebago had notice of these particular defects, regarding the stove, the jack lights, and the oil light, the Court cannot find that there is a genuine issue of material fact whether Plaintiff gave Winnebago a reasonable opportunity to cure the defects. After taking the RV to Suncoast in November 2003, there is no evidence before the Court to suggest that Plaintiff made another complaint regarding the RV or otherwise notified Winnebago of any problems until April 2004, which was after the expiration of the twelve-month limited warranty. Therefore, Winnebago did not have either notice of an unrepaired defect or a reasonable opportunity to cure the defects within the warranty period.

### B. Implied warranty

■ Plaintiff asserted a claim for breach of the implied warranty of merchantability under Magnuson–Moss. Magnuson–Moss defines "implied warranty" as an implied warranty arising under State law. 15 U.S.C. § 2301(7). In Georgia, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." O.C.G.A. § 11–2–314. This warranty protects consumers from defects or conditions existing at the time of the sale. *Dildine v. Town & Country Truck Sales, Inc.*, 259 Ga.App. 732, 577 S.E.2d 882, 884 (2003). Therefore, proof that the product was defective when sold is an essential element to recover for breach of the implied warranty of merchantability. *Id.; see Simpson*, 603 S.E.2d at 727; *McDonald*, 603 S.E.3d at 462. To be merchantable, goods must be

"fit for the ordinary purposes for which such goods are used." O.C.G.A. § 11–2–314(c). Here, Defendant contends that Plaintiff has failed to provide any evidence that the RV was defective when sold. Plaintiff responds by referring to the repair visits and an alleged defect that Plaintiff questioned Suncoast about when he purchased the RV.

■ First, Plaintiff's claim for breach of implied warranty fails because Plaintiff is not in privity with Defendants. Plaintiff purchased the RV from Suncoast RV, which is not a party to this action. In Georgia, a warranty of merchantability "clearly arises out of a contract of sale of goods, [and] can only run to a buyer who is in privity of contract with the seller." *Chaffin v. Atlanta Coca Cola Bottling, Co.,* 127 Ga.App. 619, 194 S.E.2d 513, 515 (1972); *see Keaton v. A.B.C. Drug Co.,* 266 Ga. 385, 467 S.E.2d 558, 560–61 (1996) ("Georgia law establishes that in order to recover under a theory of breach of implied warranty of merchantability, a plaintiff must have privity with the seller."). Because Plaintiff is not in privity with Defendants, Plaintiff may not maintain a cause of action against them for breach of the implied warranty of merchantability. *See Cobb County Sch. Dist. v. MAT Factory, Inc.,* 215 Ga.App. 697, 452 S.E.2d 140, 145–46 (1994) (stating that if a defendant is not the seller to the plaintiff-purchaser, the plaintiff cannot recover on the implied warranty arising out of the prior sale by the defendant to an original purchaser, such as the distributor or retailer from whom plaintiff purchased the product).

■ Even if Plaintiff could assert a claim against Defendants for breach of the implied warranty, Plaintiff has failed to create a genuine issue of material fact on the breach of implied warranty claim as to either Defendant. The record reflects that when he purchased the vehicle, Plaintiff noticed a groove in the ceiling over the driver's seat area. (Monticello Dep. at 74.) Plaintiff stated that he asked for an explanation of what may have caused the groove and Suncoast explained the cause of the groove. (*Id.*) Plaintiff did not ask for the item to be repaired at that time. (*Id.*) There is no evidence in the record that Plaintiff ever asked for the groove to be repaired, that he even viewed it as a defect, or that it in any way impaired the ordinary purposes for which the RV was to be used. Plaintiff purchased the vehicle in March 2003. Plaintiff did not make any complaints regarding the vehicle until around five months later when he took the RV for service to Travel Country RV Center. At the time of the first repair, Plaintiff had put over 4,000 miles on the RV. *Compare Simpson,* 603 S.E.2d at 727 (granting defendant summary judgment where consumers reported problems 3,784 miles and two months after purchase and another consumer reported problems 5,984 miles and four months after purchase); *with, McDonald,* 269 Ga.App. 62, 603 S.E.2d 456 (stating that evidence of rattling problem from time of purchase and fact that manufacturer was unable to find a remedy or repair for the problem supported inference that vehicle was defective at time of purchase).

The mere fact that Plaintiff ultimately had problems with the RV is not sufficient alone to create a genuine issue of material fact regarding whether any defect existed at the time of the sale. *See Dildine,* 577 S.E.2d at 884 (mere *possibility* that vehicle was defective not sufficient). Mere conclusory allegations and assertions are insufficient to create a disputed issue of material fact. *Earley,* 907 F.2d at 1081.

## II. Revocation of Acceptance

■ Defendants moved for summary judgment on the issue of revocation of acceptance. Neither Plaintiff's Complaint

nor Amended Complaint appear to assert a claim for revocation of acceptance. Furthermore, as discussed above, it is unclear how Plaintiff could assert a claim for revocation of acceptance against Defendants since Plaintiff did not purchase the RV from either Defendant but from Suncoast RV. *See Gilbert,* 352 F.Supp.2d at 1335 (stating that allowing a buyer to pursue a claim for revocation of acceptance against a manufacturer rather than the seller does not achieve the result of placing the parties in the positions they were in before the transaction). Even assuming, however, that Plaintiff could assert a claim against Defendants for revocation of acceptance, the Court has little trouble finding that Plaintiff "reaccepted" the vehicle by his continued use of it.

A buyer who purports to revoke acceptance of goods may be found to have reaccepted them if he performs acts which are inconsistent with the seller's ownership of the goods. *Olson v. Ford Motor Co.,* 258 Ga.App. 848, 575 S.E.2d 743, 746 (2002). In *Olson,* the Georgia Court of Appeals held that the plaintiff consumer failed to revoke acceptance of a truck where he used his implied ownership of the truck in negotiations with a credit union, continued paying the note, taxes and insurance on the vehicle. *Id.; see also Jenkins v. General Motors Corp.,* 240 Ga.App. 636, 524 S.E.2d 324, 325 (1999) (no revocation where plaintiff retained truck and used it). In this case, Plaintiff purportedly revoked acceptance of the RV by a letter from his counsel dated November 13, 2003. However, just two days later, Plaintiff traveled to Suncoast RV for repairs to the RV under the warranty. Additionally, Plaintiff then took the RV on a vacation to Florida over the Thanksgiving holiday. Plaintiff sought additional repairs in April 2004. Plaintiff's action were inconsistent with revocation. Consequently, even assuming that Plaintiff has asserted a claim for revocation of acceptance, the Court finds that Defendants are entitled to judgment as a matter law on this claim.

## III. Incidental and Consequential Damages

Defendants have moved for summary judgment on Plaintiff's claims for incidental and consequential damages. Because summary judgment has been granted to Defendants on Plaintiff's substantive claims, Plaintiff's claim for damages is moot.

## Conclusion

Defendant Workhorse Custom Chassis, Inc.'s Motion for Summary Judgment [51–1] is hereby **GRANTED,** Defendant Winnebago Industries, Inc.'s Motion for Summary Judgment [53–1] is hereby **GRANTED,** Defendant Winnebago Industries, Inc.'s Motion to Supplement [63–1] is hereby **GRANTED,** and Plaintiff's Motion to Supplement [66–1] is hereby **DENIED.**

**SO ORDERED** this *9th* day of March, 2005.