16-815-cv
*Pyskaty v. Wide World of Cars, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2016

(Argued:  October 27, 2016     Decided:  May 10, 2017)

Docket No. 16-815-cv

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

MAYA PYSKATY,
*Plaintiff-Appellant,*

v.

WIDE WORLD OF CARS, LLC, D/B/A WIDE WORLD BMW, BMW BANK OF NORTH
AMERICA,
*Defendants-Appellees.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Before:        SACK, RAGGI, and CHIN, *Circuit Judges*.

The plaintiff-appellant, Maya Pyskaty, purchased a "certified pre-owned" BMW for $51,195 from defendant-appellee Wide World of Cars, LLC, located in Spring Valley, New York.  After the vehicle allegedly presented problems serious enough to prevent her from driving it regularly, Pyskaty brought this action in the United States District Court for the Southern District of New York alleging claims under the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 *et seq.*, and New York State law.  The primary issue on appeal is whether there is federal subject-matter jurisdiction over

Pyskaty's claims under the Act, which requires an amount in controversy of at least $50,000.  *See* 15 U.S.C. § 2310(d)(3)(B).  The district court (Judith C. McCarthy, *Magistrate Judge*) dismissed the action for lack of subject-matter jurisdiction on the grounds that Pyskaty's claims under the Act did not satisfy the amount-in-controversy requirement, and that Pyskaty could neither add punitive damages under the Act nor rely on the value of her state-law claims to meet the jurisdictional threshold.  We conclude that the first of these determinations was erroneous because the value of Pyskaty's rescission claim under the Act exceeds $50,000.  The judgment of the district court is therefore:

REVERSED and REMANDED.

DANIEL A. SCHLANGER, Kakalec & Schlanger, LLP, New York, NY, *for Plaintiff-Appellant*.

KEITH V. LAROSE, LaRose & LaRose, Poughkeepsie, NY, *for Defendant-Appellee Wide World of Cars, LLC*.

SACK, *Circuit Judge*:

Plaintiff-appellant Maya Pyskaty appeals from the district court's dismissal of her amended complaint against defendants-appellees Wide World of Cars, LLC ("WWC") and BMW Bank of North America ("BMW Bank"), alleging violations of the Magnuson-Moss Warranty—Federal Trade Commission Act

("MMWA" or "the Act"), 15 U.S.C. § 2301 *et seq.*, and New York State law.  In October 2013, Pyskaty purchased a "certified pre-owned" BMW from WWC, which she financed in part through a loan from BMW Bank.  When the vehicle allegedly proved to be incurably defective, Pyskaty brought this lawsuit in the United States District Court for the Southern District of New York, asserting claims for (1) breach of express and implied warranties under the MMWA; and (2) deceptive acts and practices, breach of express and implied warranties, and fraud under New York State law.  In connection with her MMWA claims, Pyskaty principally sought actual damages or, in the alternative, cancellation and rescission of the purchase agreement.  In connection with her state-law claims, Pyskaty sought, *inter alia*, actual damages, capped treble damages, and punitive damages.

WWC moved to dismiss the amended complaint for lack of subject-matter jurisdiction, arguing that Pyskaty did not satisfy the MMWA's $50,000 minimum-amount-in-controversy requirement.  *See* 15 U.S.C. § 2310(d)(3)(B). The district court (Judith C. McCarthy, *Magistrate Judge*) granted the motion, agreeing with WWC that the value of Pyskaty's MMWA claims did not amount to $50,000 and that Pyskaty could neither amend her complaint to add a claim for

punitive damages under the MMWA, nor rely on the value of her state-law claims, to meet the jurisdictional threshold.

Because we conclude that the value of Pyskaty's MMWA claims, as pled, exceeds $50,000, we reverse the district court's decision and remand for further proceedings.

## BACKGROUND

On October 31, 2013, Pyskaty visited WWC, an automobile dealership located in Spring Valley, New York, seeking to purchase a "certified pre-owned" ("CPO")[1] BMW for her personal use.  Amended Complaint ("Compl.") ¶¶ 10, 13.  She inquired about the history of a 2010 BMW 750LXI (the "Vehicle") tagged "CPO," and asked specifically whether it had ever been in an accident.  *Id.* ¶¶ 20-21.  According to Pyskaty, the WWC salesman responded that the Vehicle had no

---

[1] According to a consumer website, "[t]ypically, a CPO vehicle is a used car that has gone through a rigorous inspection process and that has an extended warranty beyond the car's existing warranty.  Other hallmarks . . . are age limits, very little wear and tear, no major body damage sustained in its lifetime, no inadequate repairs, and fewer miles than a standard, non-certified used car." *What is Certified Pre-Owned*, AUTOTRADER, http://www.autotrader.com/car-news/what-is-certified-pre-owned-34835 (last visited May 2, 2017).

accident history, was "perfect," and had a "clean" CARFAX report. *Id.* ¶ 22.[2]  The salesman then showed Pyskaty a purportedly clean CARFAX report dated October 31, 2013, and affirmed that the Vehicle had passed the mandatory inspection for CPO BMWs. *Id.* ¶¶ 24-25.  Allegedly relying on these representations, Pyskaty agreed to purchase the Vehicle for $51,195.[3] *Id.* ¶ 27.  Pyskaty financed the purchase by putting down a $2,000 deposit, trading in her 2010 BMW M5, and obtaining a loan from BMW Bank for the balance of the purchase price.[4] *Id.* ¶ 28; *see also id.* ¶ 12.

---

[2] According to the CARFAX website, a "CARFAX Vehicle History Report contains information that can impact a consumer's decision about a used vehicle." *What to Consider: Free CARFAX Reports*, CARFAX, https://www.carfax.com/guides/buying-used/what-to-consider/free-carfax (last visited May 2, 2017).  Every report documents, *inter alia*, the vehicle's accident and title history (i.e., the "roadworthiness" of the vehicle and whether it has been damaged, rebuilt, or "acknowledged to be a lemon").  *The CARFAX Vehicle History Report*, CARFAX, https://www.carfax.eu/sample-report (last visited May 2, 2017).  A CARFAX report is "clean" when the subject vehicle has no reported problems. *Id.*

[3] The $51,195 purchase price reflected the cost of the Vehicle ($48,500) plus "optional dealer installed equipment" ($2,695).  App'x at 125.  The "total cash price," including tax and fees, was $52,050.65. *Id.*

[4] The loan was for a total of $70,008.19, representing (1) the "unpaid balance of [the] cash price" of the Vehicle ($49,698.65); (2) license, title, registration, and document fees ($352); and (3) the negative equity on Pyskaty's trade-in BMW ($19,957.54).  App'x at 173.  Pursuant to the retail installment contract executed by Pyskaty and WWC, Pyskaty was obligated to make monthly payments of $1,030.38 to BMW Bank, the "assignee" of the contract. *See id.*; Compl. ¶¶ 12, 98.

Within a week after the purchase, Pyskaty allegedly began experiencing problems while driving the Vehicle. Specifically, she alleged that the Vehicle "ran rough," "vibrated while driving," and "consumed large amounts of oil." *Id.* ¶¶ 29, 32-34. The Vehicle later presented additional, more worrisome issues, including intermittent loss of power steering, lack of power on acceleration, malfunctioning door locks, and engine sluggishness while in reverse. *Id.* ¶¶ 42, 50, 59, 81, 83. Between November 2013 and May 2014, Pyskaty visited multiple service centers and paid for several repairs in an attempt to fix the Vehicle. *See id.* ¶¶ 35, 40, 42-45, 48, 51, 53-54, 57, 59-62.[5] The problems persisted, however, and in June 2014, Pyskaty returned to WWC seeking to "revoke [her] acceptance of the [V]ehicle and arrange for [a] return, rescission, and refund." *Id.* ¶¶ 73-74. WWC indicated that it would accept the Vehicle only as a trade-in on another automobile that Pyskaty would have to purchase, and that it would value the Vehicle at $35,000 for that purpose. *Id.* ¶¶ 75-76. Pyskaty declined this offer because, she asserts, it would have left her with a substantial balance owed to BMW Bank pursuant to the retail installment contract by which she purchased her defective car. *Id.* ¶ 77.

---

[5] Pyskaty allegedly spent approximately $3,000 attempting to repair the Vehicle's "numerous problems." Compl. ¶ 96.

Shortly thereafter, Pyskaty began to suspect that the Vehicle had been damaged in an accident before she purchased it, contrary to the CARFAX report that she was shown in October 2013. *Id.* ¶ 78. On June 12, 2014, Pyskaty obtained an AutoCheck report,[6] which confirmed that the Vehicle had in fact sustained a rear-impact collision on August 24, 2012. Compl. ¶¶ 79-80. Allegedly "[f]eeling both unsafe and uncomfortable driving the [V]ehicle given its numerous defects, [Pyskaty] took the Vehicle off the road" and parked it in a garage where it has remained since. *Id.* ¶ 84.

On March 4, 2015, Pyskaty filed this lawsuit against the defendants in the United States District Court for the Southern District of New York. The parties consented to have a magistrate judge conduct all proceedings in the litigation, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c).[7]

---

[6] According to its website, an AutoCheck report contains an "AutoCheck Score, a tool that enables you to understand a vehicle's past quickly and easily, compare it to other vehicles, and lower the risk of buying a vehicle with undetected problems." *The Patented AutoCheck Score*, AUTOCHECK, http://www.autocheck.com/vehiclehistory /autocheck/en/autocheck-score (last visited May 2, 2017).

[7] At the time of the referral to the magistrate judge, BMW Bank had not yet appeared in the case. *See* App'x at 3 (Dkt. 11). It later filed notices of appearance and an answer to the amended complaint. *See id*. at 4-6 (Dkts. 19, 25, 29); *id.* at 138-49.

On July 30, 2015, Pyskaty filed an amended complaint alleging that the Vehicle she purchased for $51,195 was in fact worth only $20,478 at the time of sale "in light of [its] undisclosed defects and history." *Id*. ¶ 94. Pyskaty further alleged that the Vehicle, which was "unsafe to drive and inoperable on public streets," had a current value of approximately $14,865. *Id*. ¶¶ 93, 95. Finally, Pyskaty alleged that WWC must have known at the time of sale that its representations regarding the Vehicle's condition and history were "materially false," *id*. ¶ 89, because "[t]he Vehicle exhibit[ed] a plethora of traits that, although not apparent to the layperson, would unequivocally inform a BMW dealership . . . that the [V]ehicle had been in a major accident," *id*. ¶ 86.

Based on these allegations, Pyskaty asserted claims against the defendants for: (1) breach of express and implied warranties under the MMWA and New York Uniform Commercial Code ("N.Y. U.C.C.") §§ 2-313, 2-314; (2) common law fraud; and (3) false advertising and deceptive acts and practices under N.Y. Gen. Bus. Law §§ 349, 350. *See id*. ¶¶ 100-64. In connection with her MMWA claims, Pyskaty sought actual damages (or, alternatively, cancellation and rescission), attorney's fees, costs, and a declaratory judgment. *Id*. ¶ 165(a)-(b). In connection with her state-law claims, Pyskaty sought actual damages, capped treble

damages, punitive damages, attorney's fees, costs, and injunctive and declaratory relief. *Id.* ¶ 165(c)-(g).

On August 21, 2015, WWC moved to dismiss the complaint for lack of subject-matter jurisdiction, arguing, *inter alia*, that Pyskaty's claims did not meet the MMWA's $50,000 amount-in-controversy requirement for federal jurisdiction. *See* Mem. of Law in Support of Mot. to Dismiss, *Pyskaty v. Wide World of Cars, LLC*, No. 15-cv-1600 (S.D.N.Y. Aug. 21, 2015), ECF No. 18, at 2-7.[8] In support, WWC argued that Pyskaty was not entitled to a refund under the MMWA because WWC had issued only "limited" warranties, which are "not subject to the Act's extensive remedies including a refund of the purchase price." *Id.* at 3. WWC further argued that the maximum actual damages Pyskaty could recover under the MMWA—calculated by subtracting the alleged true value of the Vehicle from the purchase price—amounted to only $30,717. *Id.* at 4; *see also*

---

[8] WWC also moved to dismiss the amended complaint for lack of diversity jurisdiction. *See* Mem. of Law in Support of Mot. to Dismiss, ECF No. 18, at 2. Pyskaty conceded that diversity jurisdiction did not exist in light of the fact that a WWC principal resided in New Jersey, as did Pyskaty. *See* Mem. of Law in Opposition to Mot. to Dismiss, *Pyskaty v. Wide World of Cars, LLC*, No. 15-cv-1600 (S.D.N.Y. Oct. 1, 2015), ECF No. 30, at 1 n.1. She maintained, however, that her MMWA claims supplied a basis for federal-question jurisdiction. *See id.* at 10-17.

Affirmation of Keith V. LaRose, *Pyskaty v. Wide World of Cars, LLC*, No. 15-cv-1600 (S.D.N.Y. Aug. 21, 2015), ECF No. 17, at 9.

In opposition, Pyskaty argued, *inter alia*, that the amount in controversy under the MMWA is to be "computed on the basis of *all claims* to be determined in this suit," including Pyskaty's state-law claims.  Mem. of Law in Opposition to Mot. to Dismiss, ECF No. 30, at 11 (emphasis partially omitted) (quoting 15 U.S.C. § 2310(d)(3)(B); *see also id.* at 12-13.  Viewed in the aggregate, Pyskaty contended, the value of all claims alleged in the amended complaint "far exceed[ed] the jurisdictional requirement of $50,000."  *Id.* at 13.  Pyskaty also argued that she was entitled under the MMWA to elect a remedy of revocation or rescission—either of which, she asserted, would itself be worth more than $50,000.  *Id.* at 14-15.  Finally, Pyskaty requested leave to amend her complaint to seek punitive damages under the MMWA, thereby augmenting the value of her MMWA claims.  *Id.* at 16-17 & n.4.

On February 23, 2016, the district court issued a decision granting WWC's motion and closing the case.  *See Pyskaty v. Wide World of Cars, LLC*, No. 15-cv-1600 (JCM), 2016 WL 828135, 2016 U.S. Dist. LEXIS 21945 (S.D.N.Y. Feb. 23,

2016).[9]  The district court based its ruling on three principal conclusions.  First, the value of Pyskaty's state-law claims could not be counted toward the jurisdictional amount in controversy.  *Id.* at *5, 2016 U.S. Dist. LEXIS 21945, at *14-16.  Second, Pyskaty's alleged actual damages under the MMWA amounted to only $30,717,[10] and Pyskaty "could not use [the] proposed punitive damages to meet the MMWA minimum" because she was not entitled to recover such damages under New York State law.  *Id.* at *7, 2016 U.S. Dist. LEXIS 21945, at *20-21.  Third, even if Pyskaty were entitled to revocation or rescission under the MMWA, the value of those remedies, too, would fall below the requisite $50,000 threshold.  *Id.* at *7-9 & n.14, 2016 U.S. Dist. LEXIS 21945, at *23-28 & n.14.

Pyskaty appealed.

---

[9] Although BMW Bank had not joined in the motion to dismiss, the district court concluded that "because the [c]ourt lack[ed] subject matter jurisdiction over this action, . . . the [a]mended [c]omplaint should be dismissed as to BMW Bank[,] as well." *Pyskaty*, 2016 WL 828135, at *1 n.4, 2016 U.S. Dist. LEXIS 21945, at *2 n.4.

[10] The district court arrived at this figure by subtracting the alleged actual value of the Vehicle at the time of sale ($20,478) from the purchase price ($51,195).  *See Pyskaty*, 2016 WL 828135, at * 7, 2016 U.S. Dist. LEXIS 21945, at *20; *see also id.* at *5, 2016 U.S. Dist. LEXIS 21945, at *17 ("[D]amages ordinarily are limited to the difference between the value of the goods accepted and the value they would have had if they had been as warranted." (quoting *Lieb v. Am. Motors Corp.*, 538 F. Supp. 127, 133 (S.D.N.Y. 1982))).

**DISCUSSION**

The MMWA, also known as the federal "lemon law,"[11] is a remedial statute designed "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, 899 F.2d 1315, 1317 (2d Cir. 1990) (quoting 15 U.S.C. § 2302(a)). To achieve these goals, the Act permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with . . . a written warranty [or] implied warranty . . . [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The Act provides for federal jurisdiction, however, only where specified requirements are satisfied. Relevant here, the Act states that MMWA claims may be brought in federal court only "if the amount in controversy [meets or exceeds] the sum or value of $50,000 (exclusive of interests

---

[11] *See, e.g., Galicia v. Country Coach, Inc.*, 324 F. App'x 687, 689 (9th Cir. 2009) (unpublished opinion); *Ruiz v. BMW of N. Am., LLC*, No. SACV 16-0221 AG (JCGx), 2016 WL 1687999, at *1, 2016 U.S. Dist. LEXIS 56294, at *1 (C.D. Cal. Apr. 25, 2016); *Ricks v. New Chrysler*, No. 10-cv-9674 (SAS), 2011 WL 3163323, at *1, 2011 U.S. Dist. LEXIS 80653, *1 (S.D.N.Y. July 22, 2011); *Milicevic v. Mercedes-Benz USA, LLC*, 256 F. Supp. 2d 1168, 1178 (D. Nev. 2003), *aff'd sub nom. Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912 (9th Cir. 2005); *see also* Wendy N. Davis, *Sweeter Lemon Laws: As More Drivers Choose to Lease Cars, Courts Are Expanding Federal Warranties*, ABA J., Jan. 2006, at 8.

and costs) computed on the basis of all claims to be determined in [the] suit." *Id.* § 2310(d)(3)(B).

Pyskaty contends that the district court erred in declining to consider the value of her state-law claims when calculating the amount in controversy for the purpose of federal subject-matter jurisdiction under the MMWA. Pyskaty further asserts that the value of her MMWA claims alone is sufficient to satisfy the statute's jurisdictional threshold. Because we agree with the latter of these contentions, we need not, and do not, address the former.

## I. Standard of Review

"When reviewing the dismissal of a complaint for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*, accepting all material facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (citation omitted). We may "refer[] to evidence outside of the pleadings" to resolve issues of jurisdictional fact. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Although a plaintiff invoking federal jurisdiction must demonstrate a "reasonable probability" that the amount-in-controversy requirement is satisfied,

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994)

(citation omitted), "we recognize a rebuttable presumption that the face of the

complaint is a good faith representation of the actual amount in controversy,"

*Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)

(internal quotation marks and citation omitted).  A defendant may rebut that

presumption by demonstrating "to a legal certainty that the plaintiff could not

recover the amount alleged or that the damages alleged were feigned to satisfy

jurisdictional minimums."  *Id.* (citation and brackets omitted); *see also St. Paul*

*Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("It must appear to a

legal certainty that the claim is really for less than the jurisdictional amount to

justify dismissal.").

## II.    The Value of Pyskaty's Claims Under the MMWA

Pyskaty asserts claims against the defendants for breach of express and

implied warranties under the MMWA.  *See* Compl. ¶¶ 100-25.  Under section

2304 of the MMWA, when a warrantor breaches a "full" written warranty,[12] the

---

[12] The MMWA distinguishes between "full" and "limited" warranties and, subject to certain exemptions, requires that written warranties be "clearly and conspicuously designate[d]" as one or the other.  15 U.S.C. § 2303(a).  In order for a written warranty to qualify as a "full" warranty, the warrantor: (1) must agree to remedy the defective product within a reasonable time period and without charge; (2) may not impose any limitation on the duration of any implied warranty on the product; and (3) may not

plaintiff is entitled to a refund or replacement without charge for the defective product. 15 U.S.C. § 2304(a)(4); *see also id.* § 2303(a)(1) (stating that a written warranty shall be designated as "full" where it "meets the Federal minimum standards for warranty set forth in section 2304"). However where, as here, the warrantor made only a "limited" written warranty, *see* App'x at 127 ("Buyers Guide") (designating the applicable warranty as a "limited warranty"); Appellant's Br. at 47 n.10 (acknowledging that Pyskaty is not seeking a "refund" under 15 U.S.C. § 2304), the text and legislative history of the Act indicate that "courts [should] look to state law to determine the applicable measure of damages, which informs the amount in controversy." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (citing *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1069 (5th Cir. 1984)); *see also Torres-Fuentes v. Motorambar, Inc.*, 396 F.3d 474, 475 (1st Cir. 2005) ("[T]he [MMWA] looks to state law to determine available damages."); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (same); *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir. 1999) (same).[13]

---

exclude or limit consequential damages for breach of any written or implied warranty on the product, unless such exclusion or limitation appears conspicuously on the face of the warranty. *Id.* § 2304(a)(1)-(3).

[13] As the Fifth Circuit explained in *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162 (5th Cir. 1979), although the MMWA "is virtually silent as to the amount and type of damages which may be awarded for breach of a[] . . . limited warranty," the statutory text

In the amended complaint, Pyskaty sought "actual damages" or, in the alternative, "cancellation and rescission of the loan" in connection with her MMWA claims.  Compl. ¶¶ 117-18, 124-45.[14]  The district court construed this as a request for actual damages, rescission, or revocation of acceptance.  *See Pyskaty*, 2016 WL 828135, at *5-9 & n.14, 2016 U.S. Dist. LEXIS 21945, at *16-28 & n.14.  Pyskaty does not dispute that her claimed actual damages for breach of warranty fall well below the $50,000 amount-in-controversy requirement.[15]  She argues,

---

"provides that nothing in the Act 'shall invalidate or restrict any right or remedy of any consumer under State law,'" and "the legislative history clearly implies that a resort to state law is proper in determining the applicable measure of damages under the Act," *id.* at 1166 (quoting 15 U.S.C. § 2311(b)(1)).

[14] Pyskaty also sought declaratory relief and "reasonable attorney's fees, costs[,] and expenses" in connection with these claims.  Compl. ¶¶ 117, 124.  However, the district court concluded that attorney's fees and costs are "generally not recoverable for MMWA claims," and therefore cannot be counted toward the amount in controversy.  *Pyskaty*, 2016 WL 828135, at *5, 2016 U.S. Dist. LEXIS 21945, at *17 (citing *Boelens*, 748 F.2d at 1069); *see also Boelens*, 748 F.2d at 1069 ("Nor may [a] claim for attorney[']s fees be used to satisfy the jurisdictional amount, because § 2310(d)(3) requires that the amount in controversy be calculated 'exclusive of interests and costs[,]' [and a]ttorney[']s fees are 'costs' within the meaning of § 2310(d)(3)."); *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) (per curiam) ("'[C]ost' as used in § 2310(d)(3)(B) includes attorney[']s fees, and so they cannot be considered in calculating the jurisdictional amount.").  Pyskaty does not challenge this determination on appeal.

[15] Under New York law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted."  N.Y. U.C.C. § 2-714(2).  Here, Pyskaty alleged that she purchased the Vehicle for $51,195, but that, at the time of sale, the Vehicle was actually worth $20,478.  Compl. ¶ 94.  Accordingly, her alleged actual MMWA damages amount to only $30,717.

however, that she can satisfy that threshold based on the value of either her rescission or revocation claim. Pyskaty further argues that she should be permitted to supplement the value of her MMWA claims by amending her complaint to add a request for punitive damages.

We agree with the district court that Pyskaty may not count the value of the proposed punitive damages toward the amount in controversy. However, we conclude that Pyskaty's rescission claim supplies a sufficient basis for subject-matter jurisdiction and therefore reverse the judgment of the district court on that basis.

### A.    Punitive Damages

"We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* In general, when assessing whether an amended complaint would state a claim, we consider "the proposed amendment[s] . . . along with the

17

remainder of the complaint," *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 323 n.3 (2d Cir. 2010), *cert. denied*, 562 U.S. 1168 (2011), accepting as true all non-conclusory factual allegations therein, and drawing all reasonable inferences in the plaintiff's favor, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "in computing [the] jurisdictional amount, a claim for punitive damages is to be given closer scrutiny, and the trial judge accorded greater discretion, than a claim for actual damages." *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972), *aff'd*, 414 U.S. 291 (1973). A "trial court is plainly not compelled to accept a claim of punitive damages, however unwarranted, made for the purpose of conferring federal jurisdiction." *Id.*

In requesting leave to amend the complaint in the case at bar, Pyskaty did not propose to include additional *factual* allegations to support her claim for punitive damages. Rather, she sought permission to amend the complaint to clarify that she was seeking punitive damages as an additional remedy under the MMWA. *See* Mem. of Law in Opposition to Mot. to Dismiss, ECF No. 30, at 17 n.4.[16] The district court rejected that bid, concluding that the facts alleged in the amended complaint could not support an award of punitive damages under the

---

[16] Pyskaty's amended complaint already contained a request for punitive damages in connection with several of her state-law claims. *See* Compl. ¶¶ 146, 157, 165.

MMWA and that the proposed amendment would thus be futile. *Pyskaty*, 2016 WL 828135, at *7, 2016 U.S. Dist. LEXIS 21945, at *20-22. We agree.

As the district court correctly observed, "punitive damages are recoverable under the MMWA if they would be recoverable in a breach-of-warranty action brought under governing state law." *Id.* at *6, 2016 U.S. Dist. LEXIS 21945, at *18.[17] Although the N.Y. U.C.C. does not "indicat[e] that punitive damages are an element of recovery that is available in breach of warranty cases," 93 N.Y. Juris. 2d Sales § 325 (Feb. 2017), New York courts have assessed claims for punitive damages arising from a breach of warranty under the standard applicable to punitive damages claims arising from a breach of contract, *see, e.g., European Am. Bank v. Superior Auto Sales, Inc.*, 266 A.D.2d 69, 69, 698 N.Y.S.2d 630, 631 (1st Dep't 1999); *Krohn v. Agway Petroleum Corp.*, 168 A.D.2d 858, 859-60, 564 N.Y.S.2d 797, 799 (3d Dep't 1990). To justify an award of punitive damages under that standard, "(1) [the] defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . ;

---

[17] *See, e.g., Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1039 (9th Cir. 2004) ("State law generally guides courts in determining whether punitive damages are available as a remedy for breach of warranty under the [MMWA]."); *Boyd*, 188 F.3d at 1298 ("[A court] should look to state law, rather than federal law, to determine whether punitive damages are available under the Magnuson-Moss Act. . . ."); *MacKenzie*, 607 F.2d at 1166 (same).

(3) the egregious conduct must be directed to [the] plaintiff; and (4) it must be part of a pattern directed at the public generally." *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 316, 662 N.E.2d 763, 767, 639 N.Y.S.2d 283, 287 (1995) (internal citations omitted). In determining whether the fourth requirement is satisfied, the New York Court of Appeals has "invoked [a] . . . distinction between 'a gross and wanton fraud upon the public' and 'an isolated transaction incident to an otherwise legitimate business,'" the latter of which does "not constitute conduct aimed at the public generally." *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 95 (2d Cir. 2005) (quoting *Walker v. Sheldon*, 10 N.Y.2d 401, 406, 179 N.E.2d 497, 500, 233 N.Y.S.2d 488, 492 (1961)).

Applying these principles, the district court determined that Pyskaty's amended complaint did not state a claim for punitive damages because it alleged "'an isolated transaction incident to an otherwise legitimate business[,]' [not] . . . 'a gross and wanton fraud upon the public.'" *Pyskaty*, 2016 WL 828135, at *7, 2016 U.S. Dist. LEXIS 21945, at *21 (quoting *TVT Records*, 412 F.3d at 95). Accordingly, the district court concluded that "punitive damages . . . should not be included in calculating the amount in controversy for jurisdictional purposes." *Id.*, 2016 U.S. Dist. LEXIS 21945, at *21-22. We agree.

Pyskaty insists that she alleged sufficient public safety concerns to warrant adding a request for punitive damages to her MMWA claims insofar as she alleged that,"[b]ecause of the defects set forth [in the amended complaint], the [V]ehicle is unsafe to drive and inoperable on public streets." Compl. ¶ 93. But "[the] incidental [safety] effects of [WWC's] conduct do not constitute conduct directed at the public generally." *TVT Records*, 412 F.3d at 95. Nor are they indicative of a broader "pattern of conduct." *See Mayline Enters., Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 312 (S.D.N.Y. 2009) ("[The] plaintiff argues that the fraud was directed at the general public rather than the plaintiff individually because the truck was held out for sale to the general public with an altered odometer. The argument is logical, but [the] plaintiff has still proven only a single incident of odometer alteration."); *Stegich v. Saab Cars USA, Inc.*, 177 Misc. 2d 81, 82, 676 N.Y.S.2d 756, 756 (1st Dep't 1998) (per curiam) ("Plaintiff's general assertion that he was 'only one of many members of the public who entered the defendant [dealer's] showroom to purchase a new car' is hardly sufficient to sustain a finding that defendants' conduct constituted a public wrong." (alteration in original) (internal quotation marks omitted)). Moreover, although the amended complaint alleges, "upon information and belief," that

WWC "regularly" induces customers to purchase vehicles based on false or inaccurate information, Compl. ¶ 152, this allegation is entirely speculative: The amended complaint contains no allegations of fact which, if true, would suggest that WWC has engaged in similarly fraudulent transactions on other occasions or that Pyskaty has a good-faith basis for claiming that it does so on a "regular and recurring basis." *Id.* ¶ 154; *see Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (explaining that a "conclusory allegation on information and belief . . . [is] insufficient to make [a] claim plausible" where "the complaint's '[f]actual allegations . . . [do not] raise a right to relief above the speculative level'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (emphasis in *Arista Records*)); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) ("Where pleading is permitted on information and belief, a complaint must [still] adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.").

Therefore, in light of the fact that Pyskaty has not proposed to supplement her complaint with additional *factual* allegations to support her request for punitive damages, the district court did not abuse its discretion in denying her leave to amend the complaint to request such damages in connection with her

MMWA claims. It follows that the potential value of those damages cannot be counted toward the amount in controversy.

### B. Rescission

Under New York law, a plaintiff may obtain rescission—in lieu of actual damages—when a breach of contract is either "material and willful" or "so substantial and fundamental" that it "strongly tend[s] to defeat" the purpose of the contract. *See Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998). Because it is an equitable remedy, rescission is available only if damages would not be a "complete and adequate" remedy and "the status quo may be substantially restored" by equitable relief. *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13, 330 N.Y.S.2d 33, 43, 280 N.E.2d 867, 874 (1972) (emphasis omitted).

In the case at bar, the district court concluded that even if Pyskaty were entitled to rescission, the value of that remedy would not meet or exceed the $50,000 amount-in-controversy requirement. *Pyskaty*, 2016 WL 828135, at *7 n.14, 2016 U.S. Dist. LEXIS 21945, at *23 n.14. The district court based this conclusion on its observation that "in an action seeking the equitable remedy of declaratory or injunctive relief, 'it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Id.* (quoting *Hunt v. Wash.*

*State Apple Advert Comm'n*, 432 U.S. 333, 347 (1977)). The district court reasoned that here, "the 'object of the litigation' is the Vehicle," which, according to Pyskaty, was worth only $14,865 at the time of suit—less, of course, than the $50,000 jurisdictional threshold. *Id.*; *see also* Compl. ¶ 95 (alleging that the "current value of the [V]ehicle is approximately $14,865.00"). Accordingly, the district court concluded that Pyskaty could not establish federal subject-matter jurisdiction based on her rescission claim. *Pyskaty*, 2016 WL 828135, at *7 n.14, 2016 U.S. Dist. LEXIS 21945, at *23 n.14.

Pyskaty argues that the district court erred in treating the Vehicle, rather than the purchase agreement, as the "object of the litigation" for the purpose of valuing her rescission claim. *See* Appellant's Br. at 43-47. Pyskaty's position comports with the approach employed by our sister circuits for valuing rescission claims in this context: The Third and Sixth Circuits—which appear to be the only ones to have explicitly reached this issue—adhere to the principle that "where a plaintiff seeks to rescind a contract, the contract's entire value, without offset, is the amount in controversy." *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 329 (3d Cir. 2009) (noting that the value of the plaintiff's rescission claim

amounted to at least the full $85,000 purchase price of the allegedly defective powerboat and therefore satisfied the amount-in-controversy requirement for federal subject-matter jurisdiction).[18]  We agree.

Here, the "total cash price" of the Vehicle (including optional dealer-installed equipment, but excluding tax and dealer fees)[19] was $51,195.  Compl. ¶ 27; App'x at 125 ("Purchase Order").  Therefore, under the prevailing standard, assuming Pyskaty were entitled to rescission rather than contract damages under the MMWA, the value of that claim would satisfy the jurisdictional threshold.

We decline to adopt the approach taken by the district court, which looked to the value of the defective item—i.e., the Vehicle—rather than the amount payable under the contract to be rescinded.  That approach, we think, would likely have the perverse effect of reducing the jurisdictional value of a breach-of-

---

[18] The Seventh Circuit has similarly noted that for jurisdictional purposes, the amount in controversy does not ordinarily reflect offsets.  *See Jadair, Inc. v. Walt Keeler Co.*, 679 F.2d 131, 133 n.5 (7th Cir. 1982) (suggesting without deciding that the value of the plaintiff's rescission claim might amount to the contract price, without offset for the value of the product that the plaintiff would be required to return upon rescission).

[19] Pyskaty omits tax and dealer fees from her assessment of the Vehicle's "total cash price."  Appellant's Br. at 36, 45; *see also* Compl. ¶ 27.  It may be that these charges, which are itemized in the purchase agreement, *see* App'x at 125, can be counted toward the "contract's entire value."  *Rosen*, 205 F.3d at 921.  We need not resolve the issue, however, because the total price of the Vehicle, excluding tax and dealer fees, exceeds the jurisdictional threshold.

contract claim in direct proportion to the seriousness of the defect: The more defective the product, the less the amount in controversy. Under such a rule, a plaintiff seeking to rescind a contract under which she paid $80,000 for an item worth $60,000, for example, would meet the jurisdictional threshold, but a plaintiff who paid $1 million for goods that were worth $25,000 would not, despite having suffered a far greater harm. Any such outcome strikes us as flatly inconsistent with an obvious purpose of the MMWA's amount-in-controversy requirement: reserving federal jurisdiction for suits involving substantial disputes. *See* H.R. Rep. 93-1107, at 42 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7724, 1974 WL 11709 (explaining that the purpose of the MMWA's "jurisdictional provisions is to avoid trivial or insignificant actions being brought . . . in the federal courts").

WWC does not dispute this point. It argues instead that Pyskaty is not entitled to rescission at all, and therefore cannot rely on the value of such a claim to satisfy the amount-in-controversy requirement, because the contract with WWC limited Pyskaty's remedies to repair or replacement. WWC contends that this purported restriction is enforceable under N.Y. U.C.C. § 2-719, which states that

[an] agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts.

N.Y. U.C.C. § 2-719(1)(a). We are not convinced.

First, it is not clear that the purchase agreement in fact disclaimed Pyskaty's right to any remedy other than repair or replacement. The contract stated that upon the triggering of one of the express written warranties, WWC would "either repair the Covered Part free of charge," "reimburse [Pyskaty] for the reasonable cost of such repair," or, if WWC were "unable to repair the [V]ehicle after a reasonable number of attempts, . . . [provide] a full refund of the purchase price." App'x at 129 (New York State "Limited Lemon Law Warranty"). The contract did not, however, expressly state that those were the *sole* remedies to which Pyskaty might be entitled. *See* N.Y. U.C.C. § 2-719(1)(b) ("[R]esort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."). To the contrary, it indicated that Pyskaty "may also have other [legal] rights" in addition to those specifically stated in the written warranty. App'x at 129; *see also* Purchase Order, *id.* at 123 (making clear that the contract's "Disclaimer of Warranties" "does not limit any

implied or other warranties imposed as a matter of law" (emphasis omitted));

Buyers Guide, *id.* at 127 (identifying express limited warranties and noting that,

"[u]nder state law, 'implied warranties' may give [Pyskaty] even more rights").

Second, it seems to us unlikely that parties to a contract may, as a matter of law, contractually limit a buyer's right to the equitable remedy of rescission. By its terms, section 2-719 permits the exclusion of only those remedies that are "recoverable under [N.Y. U.C.C. Article 2]." N.Y. U.C.C. § 2-719(1)(a). Although Article 2 acknowledges the existence of rescission as a remedy for a breach of contract, that remedy—as opposed to the similar, statutory remedy of revocation, *see id.* §§ 2-608, 2-711—is not among those whose elements are spelled out in the N.Y. U.C.C. *See, e.g., id.* § 2-608, cmt. 1 ("The section no longer speaks of 'rescission[.]' . . . The remedy under this section is instead referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale."); *id.* § 2-721 (noting that "[n]either rescission [n]or a claim for rescission of the contract . . . shall bar or be deemed inconsistent with a claim for damages or [any] other remedy" available under Article 2). Moreover, insofar as "the effect of rescission is to declare a contract void from its inception," 16 N.Y. Juris. 2d Cancellation of Instruments § 1 (citing *Cty. of Orange v. Grier*, 30 A.D.3d 556, 557, 817 N.Y.S.2d

146, 147 (2d Dep't 2006)), it would be odd at best to allow the availability of this remedy to be curtailed by the very contract that the plaintiff seeks to rescind.

Finally, it is the law of this Circuit that there is a "rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," *Colavito*, 438 F.3d at 221 (citation omitted), and that "[i]f the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff," *Tongkook*, 14 F.3d at 785-86 (ellipsis in *Tongkook*) (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957)). We have also held that "a valid defense does not deprive a federal court of jurisdiction." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982). "Were the law otherwise," we explained, "the orderly progress of litigation would be disrupted, and . . . [i]ssues going to a federal court's power to decide would be hopelessly confused with the merits themselves." *Id.* Therefore, for dismissal to be warranted, "it must appear to a *legal certainty* from the complaint that the plaintiff cannot recover sufficient damages to invoke federal jurisdiction." *Id.* (emphasis added) (citing *St. Paul Mercury*, 303 U.S. 283); *see also id.* ("[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted."); *Tongkook*, 14 F.3d

at 785 ("[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." (quoting *Patton*, 240 F.2d at 426)).

In the case before us, we conclude that "from the face of the pleadings, it is [*not*] apparent, to a legal certainty, that [Pyskaty] cannot recover [on her rescission claim]." *St. Paul Mercury*, 303 U.S. at 289.[20]  We therefore conclude that the value of this claim, which exceeds $50,000, satisfies the MMWA's jurisdictional threshold.[21]

## CONCLUSION

For the foregoing reasons, the judgment of the district court is **REVERSED** and the case **REMANDED** for further proceedings.

---

[20] It may be that there is a "complete and adequate" remedy at law available to Pyskaty that precludes her right to equitable relief.  *Rudman*, 30 N.Y.2d at 13; 330 N.Y.S.2d at 43; 280 N.E.2d at 874.  However, on the record before the Court, we cannot conclude that the likelihood of this outcome is "so certain as virtually to negat[e] [Pyskaty's] good faith in asserting [a] claim [for rescission]." *Tongkook*, 14 F.3d at 785 (quoting *Patton*, 240 F.2d at 426).

[21] In light of this conclusion, we need not determine whether (1) Pyskaty's revocation claim under the MMWA would independently satisfy the amount-in-controversy requirement, or (2) the value of Pyskaty's state-law claims may be counted toward the jurisdictional threshold.