*Amphenol Corp. v. Factory Mut. Ins. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of July, two thousand twenty-four.

PRESENT:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> BETH ROBINSON,
> *Circuit Judges.*

_____

AMPHENOL CORPORATION,

> *Plaintiff-Appellant,*

> v.                                                          No. 23-832

FACTORY MUTUAL INSURANCE COMPANY,

> *Defendant-Appellee.*

_____

1

| For Plaintiff-Appellant: | MARGARET A. UPSHAW, Latham & Watkins LLP, Washington, DC (Robert J. Gilbert, Marissa Marandola, Latham & Watkins LLP, Boston, MA; Roman Martinez, David A. Barrett, Latham & Watkins LLP, Washington, DC, *on the brief*). |
|---|---|
| For Defendant-Appellee: | JONATHAN D. MUTCH, Robins Kaplan LLP, Boston, MA (Pamela E. Berman, Sandra J. Badin, Robins Kaplan LLP, Boston, MA; Dana M. Horton, Daniel F. Sullivan, Robinson & Cole LLP, Providence, RI, *on the brief*). |

Appeal from a judgment of the United States District Court for the District of Connecticut (Omar A. Williams, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the April 26, 2023 judgment of the district court is **AFFIRMED**.

Amphenol Corporation ("Amphenol") – a manufacturer of connectors, antennas, sensors, and high-speed specialty cable – appeals from a judgment entered under Federal Rule of Civil Procedure 12(c) dismissing its breach of contract claims against its insurance carrier, Factory Mutual Insurance Company ("Factory Mutual"), for losses related to SARS-CoV-2 (also referred to as the "coronavirus") that causes the disease commonly known as COVID-19. Amphenol also challenges the district court's denial of its motion for leave to file

an amended complaint, which the district court concluded would be futile. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

We review a district court's grant of judgment on the pleadings *de novo*. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). "To survive a Rule 12(c) motion, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (alterations and internal quotations omitted). We likewise review *de novo* a district court's denial of leave to amend based on futility grounds. *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018). In either case – whether deciding an appeal from a grant of judgment on the pleadings or from a denial of a motion to amend based on futility – we presume plaintiff's factual allegations to be true and draw all reasonable inferences in the plaintiff's favor. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015) (judgment on the pleadings); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017) (denial of leave to amend based on futility).

On appeal, Amphenol principally argues that its amended complaint includes sufficient facts to demonstrate that it suffered physical loss or damage

3

under the terms of its insurance policy due to the presence of coronavirus particles at its business locations around the world. *See* Amphenol Br. at 34. Amphenol primarily rests this argument on (i) its assertion that SARS-CoV-2 particles were "adsorbed" or "attached" to the physical components of its properties, (ii) studies suggesting that those particles can remain infectious to humans for up to a month after their adsorption or deposit, and (iii) the fact that Amphenol incurred significant losses, including "substantial repair and remediation efforts," as a result of that adsorption or deposit. *Id.* at 29–33 (alterations omitted). Amphenol contends that these allegations, taken together, meet the threshold for direct physical loss or damage under its policy, which is governed by Connecticut law. *See id.* at 33–34. We disagree.

The Connecticut Supreme Court has made clear that the phrase "direct physical loss of property" "clearly and unambiguously" requires "some physical, tangible alteration to or deprivation of the property that renders it physically unusable or inaccessible." *Conn. Dermatology Grp., PC v. Twin City Fire Ins. Co.*, 346 Conn. 33, 51 (2023) (alterations and internal quotations marks omitted).[1] In

---

[1] Although the language of Amphenol's policy – which requires "physical loss or damage" to its property, App'x at 102 – differs slightly from the language at issue in *Connecticut Dermatology*, the parties do not argue that the difference is material for purposes of this appeal.

4

affirming summary judgment for the insurer, it also concluded that non-persistent contamination from the very same coronavirus as the one identified here does *not* fall under the definition of "direct physical loss" of property. *Id.* at 59 ("[W]e find . . . the [corona]virus is not the type of physical contaminant that creates the risk of a direct physical loss because, once a contaminated surface is cleaned or simply left alone for a few days, it no longer poses any physical threat to occupants.").

Amphenol attempts to distinguish this case from *Connecticut Dermatology* by ascribing a longer shelf life to the SARS-CoV-2 particles based on new studies suggesting that such particles deposited or adsorbed onto surfaces can remain viable as a contagion for up to a month. *See* Amphenol Br. at 29–30. But even accepting the characterizations of these studies as true, we are not persuaded that the holding of *Connecticut Dermatology* turns on whether the contamination period for the adsorbed coronavirus is three days or a month. Indeed, the court in *Connecticut Dermatology* made clear that contamination will not be deemed to cause "direct physical loss" to property unless it is "persistent"; the court then went on to distinguish the contamination due to coronavirus from persistent contamination due to noxious substances like "gasoline," "cat urine," and "lead

dust." *Conn. Dermatology Grp., PC*, 346 Conn. at 59 (citing *Kim-Chee, LLC v. Phila. Indem. Ins. Co.*, 535 F. Supp. 3d 152, 161 (W.D.N.Y. 2021)). We therefore are unpersuaded that the adsorption of coronavirus particles, which naturally subsides after a month or less, constitutes physical loss or damage as contemplated by the policy and Connecticut law. *See id.*

Moreover, since the briefing was completed in this appeal, an intermediate appellate court in Connecticut has rejected similar claims against Factory Mutual involving nearly identical policy language. *See Mashantucket Pequot Tribal Nation v. Factory Mut. Ins. Co.*, 224 Conn. App. 429, 456–58 (2024). There – as here – the plaintiff alleged that it had incurred "physical loss or damage" to its property because the coronavirus could remain viable on objects and surfaces for up to twenty-eight days. *Id.* at 456–57. Notwithstanding this allegation, the appellate court dismissed the plaintiff's claims on the pleadings, citing *Connecticut Dermatology* for the proposition that "SARS-CoV-2 . . . is not the type of physical contaminant that creates the risk of physical loss because, once the contaminated surface is cleaned, or simply left alone for a few days, it no longer presents a threat to occupants." *Id.* at 458 (citing *Conn. Dermatology Grp., PC*, 346 Conn. at 59). Put simply, the difference between "a few days" and "twenty-eight days" did not alter

6

the conclusion that, under Connecticut law, the coronavirus was not sufficiently persistent to cause "physical loss or damage" to property under the policy. *Id.* at 456–58. As we are not persuaded that the Connecticut Supreme Court would reach a contrary conclusion at the pleadings stage, we are bound to apply Connecticut law as interpreted by its intermediate appellate courts. *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 558 (2d Cir. 2024).

We have also reached similar conclusions in two unpublished opinions in which we relied on *Connecticut Dermatology* to hold that policyholders failed to adequately allege physical loss or damage from the mere presence of coronavirus. *See Conn. Child.'s Med. Ctr. v. Cont'l Cas. Co.*, No. 22-322, 2023 WL 2961738, at *2 (2d Cir. Apr. 17, 2023) (affirming dismissal of insured's property damage claims that were premised on the assertion that direct physical presence of coronavirus on surfaces or in the air physically altered insured's property); *ITT Inc. v. Factory Mut. Ins. Co.*, No. 22-1245, 2023 WL 1126772, at *2 (2d Cir. Jan. 31, 2023) (affirming dismissal of insured's property damage claims where complaint failed to identify any property that required repair or replacement due to its exposure to coronavirus). Once again, Amphenol has not articulated why the facts alleged in this case compel a different outcome.

Amphenol nevertheless attempts to soften the impact of *Connecticut Dermatology* by relying on an out-of-circuit case involving a non-viral contaminant. *See* Amphenol Br. at 24; *see also Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (finding ammonia caused direct physical loss or damage under New Jersey law). But that case involved neither coronavirus particles nor the application of Connecticut law. It therefore provides no basis for disregarding the Connecticut Supreme Court's holding that the presence of coronavirus particles does not constitute direct physical loss or damage under Connecticut law.

Finally, Amphenol makes the circular argument that its extensive remediation efforts support an inference that it suffered physical loss or damage from the presence of coronavirus particles. But the fact that Amphenol incurred financial costs remediating the presence of coronavirus particles is not enough to show that it suffered physical loss or damage. *See Conn. Dermatology Grp., PC*, 346 Conn. at 59 (holding that the coronavirus does not create the risk of physical loss because "once a contaminated surface is cleaned" it no longer poses any physical threat to occupants). The fact that Amphenol characterizes its efforts as going "far beyond routine cleaning" is of no moment. Amphenol Br. at 33. Because

*Connecticut Dermatology* makes clear that the adsorption of viral particles, which naturally subside after cleaning or the passage of time, do not constitute physical loss or damage under the policy, the costs of cleaning, whether routine or extraordinary, do not alter that conclusion.   346 Conn. at 59.

*     *     *

We have considered Amphenol's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court